OPINION. HaeROn, Judge'. The first contention of the petitioner is that the Renegotiation Act of 1942 is unconstitutional. The Supreme Court has upheld the constitutionality of the act, in Lichter v. United States, 334 U. S. 742. The question to be decided is whether the profits received by petitioner from its renegotiable business in 1942 were excessive within the meaning of the Renegotiation Act. Petitioner’s profits before Federal taxes, subject to renegotiation, amounted to $173,934.15. Respondent determined that these profits were excessive in the amount of $125,000, which would leave petitioner profits of $48,934.15 on its renegotiable sales. Petitioner has the burden of proving that respondent’s determination is erroneous. Nathan Cohen, 7 T. C. 1002, 1011. Certain factors to be considered in determining whether profits are excessive are set forth in section 403 (a) (4) (A) of the Renegotiation Act, as amended by section 701 of the Revenue Act of 1943. Although these elements were not outlined in the Renegotiation Act before the above amendment, they “were already known by Congress to be in use in voluntary renegotiation when the act here in question was enacted,” and “are the factors which any reasonable person would naturally use in determining the amount of excessive profits.” Stein Brothers Manufacturing Co., supra, at p. 880. The factors are as follows: (i) Efficiency of contractor, with particular regard to attainment of quantity and quality production, reduction of costs and economy in the use of materials, facilities, and manpower; (ii) reasonableness of costs and profits, with particular regard to volume of production, normal pre-war earnings, and comparison of war and peacetime products; (iii) amount and source of public and private capital employed and net worth; (iv) extent of risk assumed, including the risk incident to reasonable pricing policies; (v) nature and extent of contribution to the war effort, including inventive and developmental contribution and cooperation with the Government and other contractors in supplying technical assistance; (vi) character of business, including complexity of manufacturing technique, character and extent of subcontracting, and rate of turn-over; (vii) such other factors the consideration of which the public interest and fair and equitable dealing may require, which factors shall be published in the regulations of the Board from time to time as adopted. We have considered each of these elements as applied to petitioner’s operations and financial status, and have accorded each factor the weight which we deemed pr.oper. The petitioner contends that, in the determination of the question whether its profits for 1942 were excessive, and if so, in the determination of the amount of the excessive profits, consideration should be given, “either directly or indirectly,” to the amount of its Federal income and excess profits tax liability. Petitioner calls attention to the high rates of the income and excess profits taxes in 1942. While petitioner does not state its argument clearly to be that Federal taxes should be deducted, tentatively, from its profits on its renegotiable sales, so as to focus the first consideration upon the amount of profits after Federal taxes, petitioner does challenge the validity of the broad proposition that the question is whether profits, before allowance for taxes, are excessive. The argument has been presented t,o this Court before. See Ring Construction Corporation, 8 T. C. 1070, 1088, 1090; and Crucible Steel Casting Co., 9 T. C. 523, 532. It was said in Ring Construction Corporation, supra, at pp. 1090, 1091, that: We are to determine the excess profit in “profits derived from contracts with the Department and subcontracts,” which under the statute means “the excess of the amount received or accrued under such contracts and subcontracts over the costs paid or incurred with respect thereto." (Italics supplied.) See section 403 (a), 4 (A) and (B) of the Renegotiation Act. Our first inquiry must be about the amount .of profits, regardless of the amount of Federal taxes thereon. Our analysis must start at that point. A determination which eliminates part of the profit as excessive also eliminates part of the burden of taxation, the tax being a variable which depends upon the profit allowed. Under section 403 (c) (3), in determining the amount of any excessive profits to be eliminated, there shall be allowed “credit for Federal income and excess profits taxes.” The factor of the income and excess profits taxes is one which follows upon the determination of what part of the profit is excessive, and the statute sets forth the chief factors which are to be considered in making that determination, as set forth above. All who are subject to the Renegotiation Act must be accorded equal consideration, and the act, properly construed, does not afford anyone avoidance of his share of the increased tax burden which was required to maintain the war effort. See Interwoven Stocking Co. v. Bowles, 141 Fed. (2d) 696, 701. Whether or not the elimination of a certain amount of profit, as excessive profit, will leave a concern too small a prpfit after taxes, or even will result in financial embarrassment, is a fact problem in a particular case. It would be unrealistic to fail to recognize that the revenue acts operate to reduce retained profits, entirely apart from the administration of the Renegotiation Act. Petitioner has called to our attention the following provision in section VI of the War Department Price Adjustment Board’s “Principles, Policy and Procedure to be followed in Renegotiation,” dated August 10, 1942, at page 12: * * * The effect of the excess profits tax on companies which are financially extended and have little or no tax base is frequently so severe, however, that strict adherence to the principle of considering only profits before taxes would leave practically nothing for the company, or even result in financial embarrassment, and under these circumstances the profit after taxes is a factor which may be taken into consideration in order not to impair its incentive to production. However, the record fails to support an application of the above in this proceeding. It does not appear that petitioner was “financially extended” in 1942, nor that it was in the position of having “little or no tax base” for excess profits tax purposes. Furthermore, even assuming the refund as determined by respondent, there is no persuasive evidence that “practically nothing” would be left for petitioner as profits on its renegotiable sales after taxes, or that such refund would result in “financial embarrassment.” Cf. Crucible Steel Casting Co., supra. We have noted in uur analysis that petitioner’s products, manufacturing technique, and prices remained substantially the same in 1942 as during the pre-war years 1936 to 1939, inclusive. Yet, a comparison of petitioner’s approximate net sales and earnings during the profit-making years of the period 1936 through 1939 with those during 1942 reveals the following data: Petitioner’s average annual net sales rose from $250,264 during the pre-war years to $975,507 in 1942, the latter amount including $599,000 of renegotiable business. Petitioner’s average annual profits before taxes increased from $17,756 during the pre-war period to $283,262 in 1942. Of the 1942 figure, $173,934 represented profits on renegotiable sales alone. Thus, petitioner’s total sales during 1942 were almost four times, and its renegotiable sales alone were about twice, the average sales during the pre-war years; its total profits during 1942 were more than fifteen times, and its profits on renegotiable sales were almost ten times, its average annual profits during the pre-war years; and the ratio of profits to sales increased from about 7 per cent in the pre-war period to approximately 29 per cent in 1942. These increases, it may be observed, were accomplished not by appreciable additions to petitioner’s fixed assets, but with the aid of machinery acquired at low rental from the Federal Government. As previously stated, respondent determined that $125,000 of petitioner’s profits on its renegotiable business was excessive. This refund would leave petitioner with profits of $48,934 on renegotiable sales alone, which amount is almost as much as petitioner’s total profits during the entire period 1936 through 1939 ($53,268). We are not persuaded from the evidence that the market for petitioner’s products was saturated during the post-war years. Moreover, inasmuch as petitioner had orders on hand amounting to almost three times its inventory at the end of 1942, we do not believe that petitioner was subjected to any extraordinary risk by reason of this inventory. It is concluded, and has been found as a fact, after a careful analysis of all the relevant evidence and the arguments of counsel, that the respondent correctly determined that the petitioner’s profits from its renegotiable business during 1942 were excessive in the amount of $125,000. Reviewed by the Court. An order will issue in accordance herewith.